## R. B. F. Peirce, Receiver of the Toledo, St. L. & K. C. R. R. Co., v. F. Rabberman.

1. VERDICTS—*Unsupported by the Evidence.*—When there is an entire lack of evidence to support a verdict the judgment based upon it must be reversed.

Trespass, to personal property. Trial in the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Reversed. Opinion filed August 31, 1898.

CHARLES A. SCHMETTAU and MESSICK & MOYERS, attorneys for appellant.

SILAS COOK and T. M. MOONEYHAM, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Appellee sued appellant before a police magistrate of the city of East St. Louis, and recovered a judgment for $5 damages and $10 attorney's fees for killing a hog and a pig, the property of appellee. Appellant appealed to the City Court of East St. Louis, where appellee again recovered the same amount as damages, and $50 attorney's fees, and the case is brought here by appellant, who assigns the judgment as error, with other errors which need not be noticed.

Counsel for appellee "insist" that we shall read the entire evidence in this case and we have done so in the hope of finding something more in it to sustain the judgment than we find in the abstract, but we are unable to say that we have succeeded.

The evidence shows that appellee's pig was found in the ditch at the side of the railroad track, dead, but without a bone broken or a bruise on it, and what caused its death no witness has undertaken to explain. Appellee testified, however, that " the sow had rooted and the pigs got through there." This is all the evidence there is about the pig, and appellant's counsel, probably realizing its insufficiency to sustain the judgment so far as the pig is concerned, have, as we understand them, abandoned the attempt to defend it by saying nothing whatever about the pig or how it came by its death.

As to the hog, it appears from the evidence to have been in appellee's yard next to the railroad and probably got out of the yard by loosening some of the wires of the fence near the cattle-guard, and strayed into a public highway and from thence into the field of a neighbor of appellant, from which it got upon the railroad track, fifty rods or more from the yard where it was kept.

The railroad fence along appellee's hog yard was built by appellee for the railroad company, for which the company had paid him. The undisputed evidence shows that the servants of appellant, whose duty it was to look after the fence and see that it was kept safe and in good repair, were diligent and careful in the performance of their duty in that

respect and had not discovered that the fence was out of repair, nor had appellee informed them that it was, if he knew. The evidence fails to show that any person saw the hog when it got out of the yard where it was kept, or after that, until it was found dead and mangled on the railroad.

Appellant was, for all the purposes of this case, the owner of the railroad, and the duties devolving upon him were the same as would have devolved upon the company of which he was receiver had it been operating the road. It would not have been an insurer of stock that strayed upon its right of way, but would have been bound to respond in damages for loss of or injury to stock caused by its neglect of duty or gross carelessness.

There is an entire lack of evidence tending to show carelessness in running over and wantonly killing the hog.

It is true that it was the general duty of appellant to keep the fence along the right of way of the railroad in a reasonably safe condition to turn stock, but this rule is not absolute without conditions. It has its limitations.

Appellant was not bound in the performance of his duty toward the owners of the land on each side of the railroad to keep a sentry at all hours to watch the fence of the road to see that hogs or other stock did not break the boards or wires of them, and to instantly repair them if broken, but it was his duty to keep a reasonable watch over them, in the day time, and this the evidence shows he did do, and there is none showing the contrary.

It therefore follows that the verdict of the jury was wrong, and the judgment of the court entered upon it is reversed.